*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 22-CV-0051 & 22-CV-0302

KARL GARCIA, APPELLANT,

V.

MICHELLE TYGIER and ROBERT RUBIN, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2021-CA-001962-R(RP))

(Hon. Heidi M. Pasichow, Trial Judge)

(Submitted January 12, 2023          Decided June 1, 2023; amended June 29, 2023)

*Bethany R. Benes* was on the brief for appellant.

*Laurin H. Mills* was on the brief for appellees.

Before MCLEESE and DEAHL, *Associate Judges*, and GLICKMAN, *Senior Judge*.

GLICKMAN, *Senior Judge*:  On May 28, 2021, appellant Karl Garcia filed a notice of lis pendens in the public land records of the District of Columbia.  The notice asserted Garcia's entitlement to a lien against "all the estate, real and personal," of appellees Michelle Tygier and Robert Rubin, and specifically against their personal residence in the District of Columbia.  The notice was based on a

pending lawsuit Garcia had filed against them and other defendants in Fairfax County Circuit Court, in which he alleges that the defendants had violated Virginia laws against fraudulent or otherwise improper conveyances of property to delay, hinder, or defraud creditors.

Tygier and Rubin responded to the lis pendens filing by suing Garcia in D.C. Superior Court. In that lawsuit, they asked the court to cancel and release the lis pendens notice and to sanction Garcia for the filing under Superior Court Civil Rule 11 by awarding them the attorneys' fees and costs they incurred to seek relief from it. The Superior Court denied Garcia's motion to dismiss the suit and granted appellees the relief they sought. In this appeal, Garcia challenges both the cancellation and the sanction.

We affirm the Superior Court's rulings, albeit with one qualification necessitating a remand to correct the court's order. As we explain below, the lis pendens notice did not and could not comply with the requirements of D.C. law, as set forth in D.C. Code § 42-1207, because appellees' ownership in their D.C. residence was not directly at issue in Garcia's pending Fairfax County lawsuit. Cancellation of the notice therefore was proper and required by D.C. law.

Furthermore, the court did not abuse its discretion by imposing a Rule 11 monetary sanction, because Garcia's lis pendens filing against appellees' residence is not warranted by existing law or by a nonfrivolous argument for altering existing law or establishing new law. Garcia ignored the requirements of D.C. Code § 42-1207; and while he predicates his right to file the notice on his supposed entitlement under the law of Virginia to a lien against any and all property of appellees, the judge in the Fairfax County Circuit Court proceedings had informed him, correctly, that his potential lien would apply only to assets (if any) that were transferred improperly to thwart creditors. Appellees' family home concededly is not such an asset, and Garcia did not allege or have reason to believe it was.

The record on appeal also confirms that the amount of the award of appellees' fees and costs incurred on account of the filing was appropriately supported and justified. However, given the law-related nature of the Rule 11 violation, the monetary sanction should have been imposed solely on Garcia's attorney and not on Garcia. As the order imposing the sanction appears not to comply with that requirement, we remand for the judge to amend the sanction order to make clear that it is solely Garcia's attorney who is responsible for paying the sanction.

## I. Background

Garcia filed his lawsuit in Fairfax County Circuit Court in October 2020. The action is still pending. The defendants named in Garcia's complaint are appellees Tygier and Rubin, their son, and several entities they allegedly controlled or of which they allegedly were the agents.[1] One of those entities, 819D LLC, is a District of Columbia limited liability company that sold Garcia in 2017 a condominium unit located at 819 D Street NE in the District. Garcia's complaint alleges that after he acquired this unit, he discovered it had manifold structural defects and other serious flaws, which led him to assert a multimillion dollar claim against 819D LLC and certain affiliated parties in a lawsuit he filed in D.C. Superior Court in May 2020.

Tygier and Rubin are not parties to that Superior Court lawsuit, which also remains pending.[2] But in his Fairfax County lawsuit, Garcia alleges that they and the other named defendants transferred funds between and among themselves in

---

[1] Appellees have described these other entities as being mostly "single-purpose LLCs that hold real estate for development and investment purposes."

[2] The Superior Court granted the defendants' motion to compel arbitration. Garcia appealed that ruling. After 819D LLC filed a petition for relief with the United States Bankruptcy Court for the District of Columbia, this court stayed the appeal sua sponte. *Garcia v. 819D, LLC*, No. 21-CV-0104 (July 12, 2022). The stay is still in effect.

order "to remove the funds from potential collection and to hinder, delay, and/or defraud" him and other creditors of 819D LLC, in violation of Virginia's fraudulent and voluntary conveyance statutes, Va. Code Ann. §§ 55.1-400 and 55.1-401. Garcia's amended complaint in the Fairfax County lawsuit seeks over $2 million in compensatory damages plus prejudgment interest, punitive damages, and attorney's fees and litigation costs. In addition, although Garcia does not allege that any assets other than cash were transferred improperly to thwart creditors, his complaint also asks the Fairfax County Circuit Court to enter a lien "against *all the estate, real and personal*, of each Defendant, pursuant to Va. Code § 55.1-402" (emphasis added),[3] whether or not such property was improperly transferred or has any other connection with the claims in the complaint.

The defendants filed a demurrer to the complaint, which the Circuit Court sustained in part and overruled in part for reasons the judge put on the record at a hearing on April 23, 2021, and incorporated verbatim in a written order entered on April 29, 2021. The judge overruled the demurrer as to the fraudulent and voluntary conveyance counts of the complaint. But as to the relief that Garcia could obtain if he succeeded in proving those counts, the judge said the following (emphasis added):

---

[3] As we explain below, § 55.1-402 provides for a creditor's lien against assets transferred in violation of the fraudulent and voluntary conveyance statutes.

> Regarding whether Plaintiff can obtain an in personam judgment against Defendants, generally a creditor obtains *a lien on the assets that were alleged to have been fraudulently transferred* once the fraudulent transfer has been unwound, under [Va. Code Ann. §] 55.1-402. However, the Supreme Court [of Virginia] carved out a narrow exception in Price versus Hawkins,[4] which . . . allowed the Plaintiff to obtain an in personam judgment where the evidence showed the grantees assisted the debtor in hiding cash assets that the creditor otherwise would have reached.

In other words, the judge explained that any lien obtainable by Garcia in the Fairfax County Circuit Court action would be limited under Virginia law to assets that were transferred in violation of the fraudulent or voluntary conveyance statutes, if there were such assets; with the further proviso that if Garcia proved there were improper conveyances of cash (the only improper conveyances Garcia alleged), the available relief under Virginia law would be an in personam judgment rather than imposition of a lien (or other in rem relief).

The following month, however, on May 28, 2021, Garcia filed in the District of Columbia the "Memorandum and Notice of Lis Pendens and Lien" (the Notice) against appellees' personal residence that is the subject of this appeal. The Notice states that it is filed "pursuant to Va. Code § 8.01-268 [the Virginia lis pendens

---

[4] *Price v. Hawkins*, 439 S.E.2d 382 (Va. 1994).

statute] and Va. Code § 55.1-402." It cites and attaches Garcia's Fairfax County Circuit Court complaint and states the monetary amount of the claim asserted by Garcia in that action. The Notice then states that "[p]ursuant to Va. Code § 55.1-402, Plaintiff Karl Garcia is entitled to a lien from the date of the filing of this action on October 30, 2020, against all the estate, real and personal, of each Defendant, including Defendants Michelle A. Tygier and Robert N. Rubin." The Notice identifies the residence owned by Tygier and Rubin in the District of Columbia and concludes that "[p]ursuant to Va. Code § 55.1-402, a lien is hereby entered beginning on October 30, 2020, against the Property [i.e., appellees' residence], which may be subject to further judgment and execution by reason of the within cause of action." The Notice does not identify or describe any other property sought to be affected by a lien or to be covered by the lis pendens notice.

In opposing appellees' motions in Superior Court for cancellation of the lis pendens notice and a sanction for filing it, Garcia conceded that his Fairfax County complaint "does not include an allegation that the personal residence of Tygier and Rubin was fraudulently or improperly conveyed." Nor does his complaint allege that any fraudulently or improperly transferred funds were utilized to acquire, improve, or finance the residence in any way. To the contrary, appellees submitted documentary proof, which Garcia does not dispute, that Rubin purchased the

residence in 1972, and that Tygier was added to the deed in 2014 — all long before and having no connection with the events giving rise to Garcia's Fairfax County complaint. Nothing alleged in that complaint has anything to do with appellees' family home; indeed, the complaint does not mention the residence at all.

Judge Pasichow granted appellees' motion for cancellation of the Notice (and denied Garcia's motion to dismiss appellees' complaint, which was essentially Garcia's opposition to that motion). The judge ruled that Garcia's filing of a lis pendens notice was improper under Virginia and District of Columbia law because Garcia's underlying fraudulent and voluntary conveyance claims do not involve or directly affect an interest in appellees' residence.[5]

Judge Pasichow also granted appellees' request for a Rule 11 sanction, based on her determination that the filing of a lis pendens notice in the circumstances of this case was clearly unwarranted under D.C. law regardless of the outcome in the

---

[5] Garcia raised alternative arguments in the motion to dismiss, in addition to those responsive to the motion to cancel. He asserted that appellees' decision to check the box describing the suit as one for "quiet title" on the form cover sheet attached to the complaint (where an option for "lis pendens" did not exist) required appellees to plead an adverse possession claim. Similarly, he argued that appellees failed to plead facts sufficient to state a claim for relief under D.C. Code § 42-1207. We agree with the trial court that these arguments lack merit.

Fairfax County case. To determine the appropriate sanction, the judge asked appellees to provide a detailed accounting of the attorneys' fees and costs they incurred to obtain cancellation of the Notice. Appellees submitted the requested documentation, with their counsel's affidavits. Over Garcia's objections, the judge awarded the entire amount that appellees sought, $27,937.21 for 75.5 hours of legal work, plus $355.96 in costs.

## II. Cancellation of the Lis Pendens Notice

Whether the Superior Court erred in granting appellees' motion to cancel the Notice turns on the proper interpretation of District of Columbia and Virginia statutes, as to which our review is de novo.[6]

The availability of, and the requirements for, an effective notice of lis pendens filed in the District of Columbia against real property situated in the District of Columbia are matters determined by the law of the District of Columbia, as set forth in D.C. Code § 42-1207. Subsection (a) of that statute provides that the pendency of a court action (in the District or elsewhere) affecting or asserting an ownership interest in real property in the District "does not constitute notice to, and shall not

---

[6] *Bank of Am., N.A. v. Griffin*, 2 A.3d 1070, 1072 (D.C. 2010).

affect a party not a party thereto, unless a notice of the pendency of the action or proceeding is filed for recordation, as required by subsection (b) of this section." Subsection (b) provides that the notice referred to in subsection (a) shall be effective only if, among other conditions, an ownership interest in real property that is described in the notice is directly at issue in the underlying action. Where the underlying action is not pending in a court in the District of Columbia, a person with an ownership interest in the real property against which the notice has been filed may bring an action in Superior Court, as appellees have done here, to cancel the notice.[7] The Superior Court may issue an order canceling the notice prior to the entry of judgment in the underlying action if, among other grounds, "[t]he notice does not conform to the requirements of subsection (b)."[8]

---

[7] D.C. Code § 42-1207(g)(2).

[8] *Id.* § 42-1207(h)(1). We do not see this as a case in which D.C. law governing the requirements for the filing of lis pendens notices is materially in conflict with the law of Virginia, the site of the litigation on which the Notice before us is based. But if we were to perceive a material conflict, we would weigh the District of Columbia's governmental interests more heavily than those of Virginia and still apply D.C. law. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 714 (D.C. 2013) ("To determine which jurisdiction's substantive law governs a dispute, we employ a modified governmental interests analysis. Under this analysis, the choice of law turns on which jurisdiction has the most significant relationship to the dispute, and which jurisdiction's policy would be more advanced by applying its law." (internal quotation marks and citations omitted)). Generally speaking, "[w]hether a lien creates an interest in land and the nature of the interest created are determined by the law that would be applied by the courts of the situs," and "[t]hese courts would usually apply their own local law in determining

At issue here is the requirement of subsection (b) that an ownership interest in the property must be directly at issue in the action underlying the notice of lis pendens. This requirement was added to § 42-1207 in 2010. Two years earlier, in *Heck v. Adamson*,[9] this court had construed the former version of the statute to authorize lis pendens notices where the pending litigation did not directly place property interests at issue. But the Council of the District of Columbia reacted to *Heck* by amending the statute to foreclose such a construction and use of lis pendens.

The complaint in the lawsuit underlying the lis pendens notice in *Heck* alleged that the defendant sold a property jointly owned with the plaintiff and used the plaintiff's share of the proceeds without his consent to purchase and renovate a new

---

such questions." Restatement (Second) of Conflict of Laws § 230 (Am. L. Inst. 1971). Lis pendens notices serve to "enable interested third parties to discover the existence and scope of pending litigation affecting the title to real property or asserting a mortgage, lien, security interest, or other interest in real property," *Martin v. Santorini Capital, LLC*, 236 A.3d 386, 400 (D.C. 2020), and to do so while ensuring that baseless notices do not cloud title, obstruct the transfer or encumbrance of property, or inflict other unjustified harm on property owners. Given those purposes, we readily conclude that the jurisdiction with the most substantial interest in governing the use and effectiveness of a lis pendens notice is the jurisdiction in which the affected property is located.

[9] 941 A.2d 1028 (D.C. 2008).

property.[10]  The plaintiff sued for conversion, fraud, and breach of contract, sought the imposition of a constructive trust on the new property, and filed a notice of lis pendens against that property.[11]  Our decision in *Heck* upheld the notice, reasoning that the plaintiff's assertion of a constructive trust was "*an* 'interest in real property,' which [we said] is all the statute requires."[12]  In addition, the decision cautioned that courts should only "parsimoniously" cancel a lis pendens notice prior to a judgment in the underlying action.[13]

The Council revised the statute in 2010 to address the "issues" created by *Heck* and to "correct[] flaws in the law."[14]  The Council sought to (1) "limit the applicability of the lis pendens doctrine to properties directly at issue in the underlying litigation," and (2) "create an ability for affected property owners to obtain a court order cancelling the lis pendens prior to final resolution of the

---

[10] *Id.* at 1029.

[11] *Id.*

[12] *Id.* at 1030.

[13] *Id.*

[14] LIS PENDENS AMENDMENT ACT OF 2010, Report on Bill 18-91 before the Committee on Public Safety & Judiciary, Council of the District of Columbia, at 1-3 (Nov. 10, 2009) (hereinafter, "Report on Bill 18-91").

underlying litigation."[15]  The Council wanted to prevent real property from being "tied up for years" even if the "claimant's case is weak or the affected property is not directly at issue."[16]

To accomplish its goals, the Council amended subsection (b) to state that the notice of lis pendens authorized by D.C. Code § 42-1207 "shall be effective *only if the underlying action or proceeding directly affects* the title to or tenancy interest in, or asserts a mortgage, lien, security interest, right of first offer, right of first refusal, or other ownership interest in real property situated in the District of Columbia."[17] Lest there be any doubt about this curtailment of lis pendens notices, the Council also added new subsection (j) to § 42-1207, which states that "[t]he provisions of subsections (a) and (b) of this section *shall not* be construed to apply where the title to or interest in the real property affected by the notice *is not directly at issue in the*

---

[15] *Id.* at 1.

[16] *Id.* at 2; *see also id.* at 8, Letter from Mayor Adrian M. Fenty (Jan. 21, 2009) ("The District law currently governing the filing of the notice is flawed because it allows parties with little or no direct relation to a property to file a notice and does not authorize the District's judges to adequately deal with abusive or flawed filings. This legislation will correct the current inadequacies of the law.").

[17] D.C. Code § 42-1207(b) (emphasis added).

*underlying action or proceeding.*"[18]  The Report on the Bill categorically states that the Council revised subsection (b) and added subsection (j) to "specif[y] that the doctrine of lis pendens cannot be applied to real property tangentially related to the dispute, such as was the case in *Heck v. Adamson*[,] 941 A.2d 1028 (D.C. 2008)."[19]

In the case now before us, appellees' residence in the District of Columbia is the only property that the Notice describes with the specificity required by subsection (b).[20]  Garcia's maintenance of that Notice therefore depends on whether an ownership interest in that residence is directly at issue in the Fairfax County litigation.  It does not appear to be, since Garcia does not claim in that action that the residence was conveyed to appellees in violation of the statutes prohibiting fraudulent or voluntary transfers.[21]

---

[18] *Id.* § 42-1207(j) (emphasis added).

[19] Report on Bill 18-91, *supra* note 14, at 5.

[20] D.C. Code § 42-1207(b)(8) requires a "[d]escription of the real property sought to be affected" by the notice of lis pendens.  The Notice does not describe any real property other than the residence.  (Although the Notice purports to cover appellees' personal property as well as their real property, it does not identify such property, and § 42-1207 does not provide for lis pendens notices against any property other than real property.)

[21] *See, e.g.*, *Fidelity Nat. Title Ins. Co. v. Tillerson*, 2 A.3d 198, 202 (D.C. 2010) ("Actions to recover a debt . . . do not give rise to lis pendens because no specific property is designated for relief in the judgment.  No lis pendens is involved

Garcia does not explicitly address the "directly at issue" requirement of D.C. law, nor does he claim to have complied with D.C. Code § 42-1207 when he filed the Notice. Instead, Garcia purported to file the Notice "pursuant to" Va. Code Ann. §§ 8.01-268 and 55.1-402. He contends that the latter section entitles him to a creditor's lien against all of appellees' property, "real and personal," including their residence, even though that property has no connection of any kind with the improper conveyances alleged in his Fairfax County lawsuit. We may assume, arguendo, that if Virginia law actually afforded him a creditor's lien against appellees' residence, their ownership interest would be directly at issue in the lawsuit. We conclude, however, that Garcia misapprehends Virginia law.

Va. Code Ann. § 8.01-268 is the statute that authorizes filings of lis pendens memoranda (notices) in the courts of Virginia.[22] It states that "[n]o memorandum of lis pendens shall be filed unless the action on which the lis pendens is based seeks to establish an interest by the filing party in the real property described in the

---

merely because a money judgment gives the prevailing party a judgment lien in real property owned by the defeated party." (quoting 14 Richard R. Powell, *Powell on Real Property*, § 82A.02[4][4c] (Michael Wolf ed. 2009))); *see also McNair Builders, Inc. v. 1629 16th St., L.L.C.*, 968 A.2d 505, 507 (D.C. 2009).

[22] The statute does not address filings in other jurisdictions, such as the District of Columbia.

memorandum."[23] Case law in Virginia understands this to mean "that the interest [sought to be established] in the property must be something more than an attachment or lien on the property due to a monetary judgment in litigation unrelated to the property."[24] Thus, "it is clear that a lis pendens may not be filed on a defendant's property in conjunction with litigation that seeks only to obtain monetary damages and that is unconnected to the property."[25] Section 8.01-268(B) likewise precludes a plaintiff who has an interest supporting the filing of a lis pendens memorandum against some of a defendant's property from filing such a

---

[23] Va. Code Ann. § 8.01-268(B).

[24] *Palm Harbor Homes, Inc. v. Leader Funding, Inc.*, 70 Va. Cir. 31, 38 (Va. Cir. Ct. 2005); *see also Cadle Co. II, Inc. v. Superior Constr. & Contracting, Inc. (In re Rice)*, 362 B.R. 687, 689 (Bankr. E.D. Va. 2006) (explaining that § 8.01-268 "was amended in 1988 to make clear that it applies only when an interest in land is involved in the litigation, and not when the object is only to obtain a money judgment"); *Meliani v. Jade Dunn Loring Metro, LLC*, 286 F. Supp. 2d 741, 745 (E.D. Va. 2003) ("[T]he caselaw interpreting § 8.01-268(B) is uniformly to the effect that a lis pendens is improper, and should be quashed, if the plaintiff does not allege an interest in the property in his underlying cause of action.").

[25] *Palm Harbor Homes*, 70 Va. Cir. at 35; *see also, e.g.*, *Green Hill Corp. v. Kim*, 842 F.2d 742, 744 (4th Cir. 1988) ("The Virginia Supreme Court has stated that the lis pendens statute is applicable to disputes concerning title to real property, but not to an action to recover a personal judgment." (citing *Preston's Drive Inn Rest., Inc. v. Convery*, 154 S.E.2d 160, 163 (Va. 1967))).

memorandum against other property merely because it is owned by that same defendant.[26]

There exists no exemption from § 8.01-268(B) in the other statute on which Garcia relies, Va. Code Ann. § 55.1-402. That statute provides for creditors' liens supporting a lis pendens filing in actions to avoid fraudulent or voluntary conveyances.[27] Section 55.1-402 states explicitly that it "is subject to the provisions of" § 801-268. "Therefore, . . . a plaintiff in an action claiming fraudulent conveyance as to a specific property is not free to file a memorandum of lis pendens on property in which he does not assert or claim an interest."[28]

Garcia argues, however, that § 55.1-402 recognizes a creditor's lien extending to *all* of a debtor's or transferee's property, whether or not the claim of fraudulent

---

[26] *See, e.g.*, *Meliani*, 286 F. Supp. 2d at 745-46 ("[A] plaintiff in a breach of contract and fraud action regarding the transfer of one piece of property cannot file a memorandum of lis pendens burdening other property owned by the defendant because the plaintiff's interest does not extend to that other property.").

[27] This "lien is not perfected until the court avoids the debtor's conveyance. If there is no adjudication, the lien is inchoate and ineffectual." Doug Rendleman, *Enforcement of Judgments and Liens in Virginia*, § 11.5[C] (Matthew Bender & Co., 3d ed. with 2022 Supp.) (citing *Quinn-Marshall Co. v. Whittaker*, 83 S.E. 398, 401 (Va. 1914)).

[28] *Meliani*, 286 F. Supp. 2d at 747.

or improper conveyance applies to it, because the statute says that a creditor asserting such a claim "shall have *a lien . . . on all the estate*, real and personal" (emphasis added). The same contention was made to the court in *Meliani*, which rejected it as a "misreading" of the statute, contrary to its plain terms and its explicit incorporation of § 8.01-268(B).[29]  We agree that it is such a misreading.

Section 55.1-402 reads in pertinent part as follows:

> Before obtaining a judgment for his claim, a creditor may . . . institute any action that he may institute after obtaining such judgment to avoid a . . . conveyance . . . of . . . the estate of his debtor declared void by either § 55.1-400 or [§] 55.1-401.  Such creditor may, in such action, have all the relief with respect to such estate to which he would be entitled after obtaining a judgment for the claim for which he may be entitled to recover.  A creditor availing himself of this section shall have a lien . . . on all the estate, real and personal . . . .

As the *Meliani* court explained, § 55.1-402 provides that the "estate" subject to the aforesaid creditor's lien is *only* "the estate of his debtor declared void by either § 55.1-400 or [§] 55.1-401," i.e., the lien is limited to securing "the relief with respect to such estate to which [the creditor] would be entitled after obtaining a judgment" on his claim under those statutes.  This coincides with the general rule

---

[29] *Id.*

that "[p]roperty is affected [by a notice of lis pendens] only to the extent of the relief granted [or that could be granted] in the final decree or judgment."[30]  Thus, Garcia's lis pendens notice could not permissibly encumber property against which he could not obtain a final judgment in his Fairfax County action.

That limitation on Garcia's potential judgment is dispositive here, for as the Supreme Court of Virginia has explained, §§ 55.1-400 and 55.1-401 do not provide for a final judgment against all the property of a violator of those provisions.  Rather, they provide

> a specific remedy — a judicial decree declaring the conveyance void as to the transferor's creditors.  This remedy returns the fraudulently conveyed assets to the transferor, but, as a general rule, it does not authorize a court to award an in personam judgment when the transaction is set aside. . . .  The in-personam-judgment exception [that] applies to recipients of fraudulent cash transfers . . . unwinds the transfer of the cash in the grantee's pockets; it does not impose liability upon the grantee by virtue of his participation in the transaction.[31]

---

[30] *1st Atl. Guar. Corp. v. Tillerson*, 916 A.2d 153, 157-58 (D.C. 2007) (quoting Powell, *supra* note 21, § 82A.04[2]).

[31] *Grayson v. Westwood Bldgs. L.P.*, 859 S.E.2d 651, 665-66 (Va. 2021) (footnotes, citations, internal quotation marks, and brackets omitted).

Thus, actions under §§ 55.1-400 and 55.1-401 serve only to avoid or reverse the debtor's prohibited conveyances; they are designed to provide for the return of fraudulently conveyed assets, but not to impose either personal liability on the participants or a lien or attachment on any of their assets that were not conveyed in violation of those statutes.[32]   Consequently, "[t]he fraudulent conveyance lien, unlike the lien of a judgment, attaches only to the property the debtor fraudulently conveyed and not to all of her estate."[33]

Garcia does not claim or seek to establish that appellees' residence was conveyed in violation of § 55.1-400 or § 55.1-401, and the allegations in his Fairfax County complaint appear to support only an in personam judgment against appellees (for the cash transfers that allegedly violated the fraudulent or voluntary conveyance statutes).  Garcia therefore was not entitled under § 55.1-402 to assert a creditor's lien against the residence.  Hence no ownership interest in appellees' residence was directly at issue in the Fairfax County Circuit Court action.  We therefore hold that

---

[32] *Id.*; *see also Bennett v. Garner*, 913 F.3d 436, 441-42, 442 n.3 (4th Cir. 2019); *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 406 (Va. 2017); *Price v. Hawkins*, 439 S.E.2d 382, 384-85 (Va. 1994); *Mills v. Miller Harness Co.*, 326 S.E.2d 665, 667 (Va. 1985).

[33] Rendleman, *supra* note 27, § 11.5[C].

Garcia lacked a legally sufficient basis to file the Notice, and the Superior Court did not err in cancelling it.

### III. Rule 11 Sanction

Superior Court Civil Rule 11 authorizes the court to impose "an appropriate sanction" on a party or the party's attorney for the assertion of a claim or legal contention that, in violation of Rule 11(b)(2), is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[34] An appropriate sanction may include, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from" such conduct;[35] provided, however, that "[t]he court must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)."[36] We have held that the Superior Court has discretion to impose a Rule 11 sanction

---

[34] Super. Ct. Civ. R. 11(b)(2), (c)(1).

[35] *Id.* R. 11(c)(4). "If warranted," the court also may award reasonable expenses, including attorney's fees, incurred in moving for Rule 11 sanctions. *Id.* R. 11(c)(2).

[36] *Id.* R. 11(c)(5)(A).

for the legally unwarranted assertion of lis pendens; a finding that the assertion was in bad faith is not a prerequisite.[37] "We review the trial court's lis pendens sanctions award under the Sup. Ct. Civ. R. 11 standard for abuse of discretion."[38]

Subject to one caveat, we are satisfied that the court did not abuse its discretion in granting appellees' motion for a sanction based on a violation of Rule 11(b)(2) and awarding them their reasonable attorneys' fees and costs incurred to obtain the cancellation of the lis pendens notice that Garcia filed against their residence. As previously explained, the filing was not "warranted by existing law."[39] We are mindful that the filing "must not be viewed 'with 20/20 hindsight'" based on

---

[37] *See Bloom v. Beam*, 99 A.3d 263, 268-69 (D.C. 2014); *6921 Georgia Ave., N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 973 (D.C. 2008). The lis pendens statute, D.C. Code § 42-1207, also contains a provision authorizing the court to impose sanctions, "[w]hen appropriate," for the filing of a notice of lis pendens. D.C. Code § 42-1207(d)(1); *see also 6921 Georgia Ave.*, 954 A.2d at 973 (holding that the standard for imposing a sanction under the statute is the same as the standard in Rule 11). This provision is not directly applicable here, however, because it only comes into play after a judgment has been entered in the underlying lawsuit and that judgment is "against the party who filed the notice." D.C. Code § 42-1207(d)(1).

[38] *Bloom*, 99 A.3d at 269.

[39] Super. Ct. Civ. R. 11(b)(2).

the understanding that the legal claim ultimately failed.[40]   Instead, the filing is unwarranted by existing law "when it is 'patently clear that a claim has absolutely no chance of success,'"[41] which would have been revealed to the party's counsel upon a reasonable pre-filing inquiry.[42]  A reasonable pre-filing inquiry in this case should have revealed to Garcia's counsel that the lis pendens statutes and case law of both the District of Columbia and Virginia clearly precluded the assertion of a creditor's lien against appellees' residence based on the Fairfax County lawsuit.  No excuse appears for Garcia's counsel's ignorance on that score.  Indeed, counsel should have been aware of this even without having made proper inquiry into the

---

[40] *See Kleiman v. Aetna Cas. & Sur. Co.*, 581 A.2d 1263, 1266 (D.C. 1990) (quoting *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1029-30 (D.C. 1989)).

[41] *District of Columbia v. Fraternal Ord. of Police, Metro. Police-Lab. Comm.*, 691 A.2d 115, 119 (D.C. 1997) (quoting *Gray v. Washington*, 612 A.2d 839, 842 (D.C. 1992)).  Relevant considerations include "the plausibility of the position taken and the complexity of the issue" and "the clarity or ambiguity of the law." *Id.*

[42] *See Williams v. Bd. of Trs. of Mount Jezreel Baptist Church*, 589 A.2d 901, 910 (D.C. 1991); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are 'nonfrivolous.'  This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.").  Super. Ct. Civ. R. 11 is identical to the corresponding Federal Rule, and "we may consider the Advisory Committee Notes on the federal rules as offering guidance in construing the local rules." *Cohen v. Owens & Co.*, 464 A.2d 904, 906 n.3 (D.C. 1983).

law, because the judge presiding over Garcia's Fairfax County action told Garcia and his counsel that the lien created by § 55.1-402 applied only to "the assets that were alleged to have been fraudulently transferred." Yet counsel disregarded that warning and predicated Garcia's claim to a lien on appellees' residence on a facially unreasonable and previously rejected interpretation of that statute.[43]

The recordation of an unmerited notice of lis pendens against a person's home creates a cloud on title that can have serious adverse consequences for the owner. It may, for example, discourage potential purchasers and lenders and thus impede the owner from selling or refinancing the property. It may harm the owner's credit rating. And as this case illustrates, it may be expensive and time consuming for the owner to have the lis pendens notice cancelled. Consequently, the filing of an unwarranted lis pendens can be an effective, albeit improper, tactic by an opposing party to gain undue leverage in litigation. All these considerations indicate that an award of attorneys' fees and litigation expenses as a Rule 11 sanction for such a filing is well "warranted for effective deterrence" within the contemplation of Rule

---

[43] Moreover, aside from his patently erroneous interpretation of § 55.1-402, Garcia has made no argument for extending, modifying, or reversing existing law or for establishing new law to support his lis pendens notice.

11(c)(4). The concern in making such an award is not merely to deter the particular offender from repeating the offense, but to deter others from committing it too.

We also are satisfied that the court "did not abuse its discretion in calculating reasonable attorney's fees that related to the lis pendens litigation for the duration of the claim."[44] Before imposing a monetary sanction, we have instructed the trial court to address several factors. For one, the court must consider "the reasonableness of the injured party's attorneys' fees."[45] Appellees' counsel furnished affidavits confirming their qualifications and the reasonableness of their hourly rates (which Garcia did not contest) and comprehensive documentation of the legal work they performed. Their submission included "contemporaneous, complete and standardized time records" and was "sufficiently detailed" to support the court's

---

[44] *Bloom*, 99 A.3d at 269.

[45] *Williams*, 589 A.2d at 911. The court should also consider the minimum amount that is necessary to deter the sanctionable conduct; "the offending party's ability to pay"; and the severity of the violation, the offending party's experience, the existence of bad faith, the risk of chilling similar litigation, and "other factors as deemed appropriate" for the circumstance. *Id.* at 912 (citation omitted). Much of Garcia's focus is on the reasonableness of appellees' attorneys' fees; he does not argue, for example, that he cannot afford the sanction or that other circumstances unique to this violation warrant a different result.

determination that "the hours claimed [were] justified."[46]  The burden therefore was on Garcia to "submit facts and detailed affidavits to show why the applicant's request should [have been] reduced or denied."[47]  This was not a burden he carried.  His objections strike us as trivial and picayune, and unconvincing at best.

We are not persuaded, for example, by Garcia's complaints that the documentation did not include appellees' contracts with their attorneys, and that the invoices that were included were insufficient because they were sent to "TR Holdings DC" instead of to "Ms. Tygier" and "Mr. Rubin."  In dismissing those quibbles, the court reasonably took note of the fact that the invoices bore appellees' initials and were addressed to their personal residence, and it could determine from the submitted documentation that the legal work performed was for appellees and related to this case.  To the extent that Garcia contends it is inappropriate to award appellees fees that were paid on their behalf by another legal entity, TR Holdings DC, we think the objection is not well taken.  In the trial court, appellees' counsel

---

[46] *Hampton Cts. Tenants Ass'n v. D.C. Rental Hous. Comm'n*, 599 A.2d 1113, 1117 (D.C. 1991) (citation omitted); *see also Peddlers Square, Inc. v. Scheuermann*, 766 A.2d 551, 559 (D.C. 2001) (affirming a Rule 11 sanction based on the "detailed affidavit documenting expenditures, hours of attorney time, rates charged, and specific work performed").

[47] *Hampton Cts. Tenants Ass'n*, 599 A.2d at 1116 n.9 (citation omitted).

represented that Garcia "knows that TR Holdings DC is Plaintiffs' company, and because this case related to the 819D LLC District of Columbia and Fairfax litigation, it was under the 819D LLC Wty Lit matter in the firm's database." Garcia does not dispute this, and the court thus fairly concluded that appellees paid the legal bills indirectly if not directly. Furthermore, as with fee awards in other contexts, case law supports a Rule 11 sanction award of attorneys' fees to a party even when the fees were paid by an unrelated entity, such as an insurance company.[48] And awarding the fees directly to the party injured by the violation of Rule 11 best serves the deterrence goal of Rule 11, as it assures that the violator will gain no advantage over the opposing party from violating the Rule. For these reasons, we decline to direct the trial court to determine, on remand, whether Garcia should pay the sanction to TR Holdings DC instead of to appellees directly.[49]

---

[48] *See Peddlers Square*, 766 A.2d at 555, 558-59; *cf., e.g.*, *Doe v. Burke*, 133 A.3d 569, 578 (D.C. 2016) (noting that the attorneys' representation of the defendant pro bono did not preclude the defendant from recovering an attorneys' fee award under the Anti-SLAPP Act); *Martin v. Tate*, 492 A.2d 270, 274 (D.C. 1985) (upholding fee award to prevailing party in domestic relations case even though the party was not required to pay any fees because the party's attorney was with a public service organization).

[49] We are similarly unpersuaded by Garcia's assertion that the trial court did not determine that the amount of the sanction was necessary or that this sanction could chill legitimate lis pendens filings. The court explicitly considered Garcia's attorney's evasive litigation "tactics" in weighing the necessity of the sanction. Such conduct further supports that the amount of the sanction was reasonably necessary here. And Garcia has not suggested a lesser sanction that would sufficiently deter

The caveat we mentioned concerns *whom* the court sanctioned in this case. Rule 11(c)(5)(A) precludes imposition of a monetary sanction on a represented party for a violation of Rule 11(b)(2), recognizing that "[m]onetary responsibility for such violations is more properly placed solely on the party's attorneys."[50]  However, the court in this instance ordered "Defendant" to pay the award.  We understand this to mean that the court erroneously imposed the obligation on Garcia, and only on Garcia, rather than on his counsel.  We therefore will direct the court to correct the order on remand.

## IV. Conclusion

For the foregoing reasons, we remand for the Superior Court to clarify that the Rule 11 sanction it imposed is against Garcia's counsel and not on Garcia personally.  In all other respects, we affirm the judgment of the Superior Court.

## Addendum

On June 1, 2023, this court issued the above decision, remanding the case for the Superior Court to clarify that the Rule 11 sanction it imposed is against appellant

---

future unwarranted lis pendens filings, particularly in light of the adverse consequences a lis pendens filing may cause a property owner.

[50] Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Garcia's counsel and not on Garcia personally, and affirming the judgment of the Superior Court in all other respects. We subsequently received (1) a Petition for Rehearing filed by appellant's counsel, Bethune Benes, PLLC (hereinafter, "the Firm") on June 6, 2023, requesting this Court to reconsider its June 1, 2023, Judgment in order to provide the Firm with "an opportunity to be heard and defend itself on any sanctions that are sought sua sponte by the Court prior to any entry of judgment"; and (2) an Agreed Order of Dismissal filed by the parties' counsel on June 12, 2023, stating that the parties have fully settled this matter, that the Firm withdraws its Petition for Rehearing, and that the parties "request this Court [to] dismiss this case with prejudice." For the following reasons, we deny the parties' request to dismiss these appeals, and we deny the Petition for Rehearing rather than treat it as withdrawn.

As stated in D.C. App. Rule 13(b)(2), an "[a]ppeal *may* be dismissed if the parties file a signed dismissal agreement specifying how costs are to be paid and pay any fees that are due. An appeal *may* also be dismissed on the appellant's motion on terms agreed to by the parties . . . ." (Emphases added.) The use of the word "may" indicates that the request for dismissal is committed to this court's discretion. In the present matter, we exercise our discretion to deny the parties' request because the parties filed it after this court rendered its decision in the appeals, and they have not identified a proper purpose for the relief they seek. "Judicial precedents 'are not

merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.' We do not vacate opinions merely because the parties subsequently settle their differences and ask us to return them to the status quo ante by erasing our decision in their case from the public record. In the ordinary situation, the losing party's proper, and only, recourse is to petition this court for rehearing or rehearing en banc." *Bryan v. United States*, 836 A.2d 581, 586 (D.C. 2003) (Glickman, J., concurring) (citation omitted); *see also* 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.10.2 (3d ed. 1998) ("If settlement is reached after entry of the decision on the merits of the appeal, settlement ordinarily should not be the occasion for vacating opinions or judgment."); *id.* ("The precedential force of the opinion should not be diminished in any measure by the settlement. The fact that one party may fear future precedential effects and be eager to avoid them by paying off through settlement is not significant . . . .").

Because we deny the parties' request to dismiss the appeals, we do not treat the Petition for Rehearing as having been withdrawn. The Firm argues in that petition that Garcia sought Rule 11 sanctions only against "the Defendant," and that the Firm therefore did not have notice that it might be sanctioned or the opportunity to argue against it or for a lesser sanction.

We are not persuaded by the Firm's claim of procedural unfairness. As required by Rule 11(c)(2), the motion for (monetary) sanctions described the specific conduct (assertion of an unwarranted legal claim) that allegedly violated Rule 11(b)(2), and the Firm had and exercised the opportunity to respond to that allegation on its merits and to raise any procedural objections or arguments against the sanction as well. Rule 11(c)(1) put the Firm on notice that if the court determined there was a violation of Rule 11(b), the court could "impose an appropriate sanction on any attorney, law firm, or party" that was "responsible" for the violation — in other words, on the Firm and/or Garcia's attorney herself. And Rule 11(c)(5) also put Garcia's counsel on notice that a monetary sanction for a violation of Rule 11(b)(2) in particular would not be imposed on a represented party, but instead would be levied against the lawyer or law firm responsible for pursuing the unwarranted legal claim. The Rule 11 Notice that appellees' counsel sent to the Firm before moving for sanctions (which the Firm itself appended as an exhibit to the Opposition to Plaintiffs' Rule 11 Motion for Sanctions that it filed in Superior Court) quoted Rule 11(c) and explicitly warned the Firm that "*you [i.e., Garcia's counsel] and your client*" (emphasis added) were "in serious jeopardy of being sanctioned pursuant to Rule 11(c)."

In our view, moreover, the Firm has not shown that it had a substantial argument against being sanctioned that it did not make because it was under the

mistaken impression that the sanction could be imposed only on Garcia personally. The Firm suggests it failed to argue that a lesser sanction than the monetary penalty the trial court imposed would have been sufficient to deter any similar wrongful conduct by the Firm in the future. But the wrongful conduct charged in the Rule 11 motion was that of the Firm, so whatever the merits of this argument, the Firm had the same incentive to make it and could have made it in its opposition to the motion even if it thought that any sanction for its own misconduct would be imposed only on its client Garcia. And in any event, this court's remand order, directing the Superior Court to clarify that the sanction it imposed would be against Garcia's counsel rather than Garcia personally, did not preclude the Firm from arguing on remand that it deserved a lesser sanction. The Firm chose not to pursue that course of action.

The petition for rehearing and the request to dismiss these appeals with prejudice are denied, and the Clerk is directed to issue the mandate in these appeals forthwith.